IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Wiley Y. Daniel

Civil Action No. 05-cv-00988-WYD

ADRIEL BORGHESI,

    Applicant,

v.

GARY WATKINS, and
JOHN SUTHERS, the Attorney General of the State of Colorado,

    Respondents.

---

ORDER DENYING 28 U.S.C. § 2254 APPLICATION

---

    Applicant, Adriel Borghesi, is a prisoner in the custody of the Colorado Department of Corrections (DOC) who currently is incarcerated at the Delta, Colorado, correctional facility. On June 20, 2005, he filed *pro se* an amended application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In an order filed on August 31, 2005, I directed the respondents to file an answer to the amended habeas corpus application. On September 29, 2005, the respondents filed their answer. On June 12, 2007, Mr. Borghesi filed a reply.

    I must construe liberally the application and the reply to the answer because Mr. Borghesi is representing himself. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, I should not be the *pro se* litigant's advocate. *See Hall*, 935 F.2d at 1110. After reviewing the entire file, I

find that an evidentiary hearing is not necessary. For the reasons stated below, the application will be denied and the action dismissed.

## I. Factual and Procedural Background

Mr. Borghesi was charged in Denver District Court in two separate informations with several counts of aggravated robbery. The cases, Nos. 98CR4732 and 98CR5115, were consolidated for trial. Mr. Borghesi was charged with robbing Kitty's Adult Book and Video Store clerks Jason Downs on September 13, 1997 (count one), Michael MacMillan on September 13, 1997 (count two), and Jason Downs on September 19, 1997 (count three). Both robberies were accomplished by a man wielding what was described as a hatchet. Mr. Borghesi was convicted of the three charged counts of aggravated robbery. On May 24, 1999, he was sentenced to the DOC for consecutive and concurrent sentences totaling twenty years.

On direct appeal, the Colorado Court of Appeals reversed the conviction for robbery alleged in count two, ruling that the information containing count one and count two was unconstitutional because it was multiplicitous, i.e., because it charged a single offense in two counts. *See People v. Borghesi*, 40 P.3d 15 (Colo. Ct. App. 2001). The Colorado Supreme court granted certiorari review. On March 24, 2003, the state supreme court reversed the appeals court. *See People v. Borghesi*, 66 P.3d 93 (Colo. 2003). The supreme court returned the case to the appeals court to address the two issues not reached in its earlier decision. *See id.* at 106.

The Colorado Court of Appeals addressed the two unresolved issues, and rejected Mr. Borghesi's claims that the evidence was insufficient to support both

robbery convictions and that the trial court erred by imposing consecutive sentences. *See People v. Borghesi*, No. 99CA1358 (Colo. Ct. App. June 19, 2003) (not selected for publication). On November 10, 2003, the Colorado Supreme Court denied certiorari review. On March 18, 2004, Mr. Borghesi filed a postconviction motion pursuant to Rule 35(b) of the Colorado Rules of Criminal Procedure for sentence reconsideration, which the trial court denied on May 20, 2004. He alleges that he did not appeal from the denial. The habeas corpus application was signed and presumably mailed on May 16, 2005. It was received for filing on May 18, 2005, and was filed on May 31, 2005. I will deem this action commenced on May 16, 2005, pursuant to the prisoner mailbox rule. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).

Mr. Borghesi asserts four claims: (1) that his right to due process of law and a fair trial was violated by the admission of testimony concerning an impermissibly suggestive identification procedure, (2) that his right to due process of law was violated by a multiplicitous information that charged him with two separate counts of robbery arising from "one robbery and one taking," amended application at 3, (3) that the evidence was insufficient to sustain the robbery naming Michael MacMillan as the victim, and (4) that the evidence was insufficient to sustain the robbery of Kitty's that occurred on September 19, 1997.

II. Timeliness of the Application

Respondents contend in their answer that the application is barred by the one-year limitation period in 28 U.S.C. § 2244(d)(2). I disagree. Section 2244(d)(2) provides as follows:

3

>   (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

I first must determine the date on which the one-year limitation period began to run. As noted above, the Colorado Supreme Court denied Mr. Borghesi's petition for writ of certiorari on direct appeal on November 10, 2003. Mr. Borghesi then had ninety days to seek review in the United States Supreme Court, *see* Sup. Ct. R. 13, although

4

he does not allege that he did so. Therefore, for the purposes of the one-year limitation period, his conviction and sentence became final on February 9, 2004, when the time for seeking review in the United States Supreme Court expired. *See Rhine v. Boone*, 182 F.3d 1153, 1155 (10th Cir. 1999). Mr. Borghesi does not allege that unconstitutional state action prevented him from filing the instant action sooner, he is not asserting any constitutional rights newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, and he knew or could have discovered the factual predicate for his claims at the time he was convicted. Therefore, I find that the one-year limitation period began to run on February 9, 2004.

The Colo. R. Crim. P. 35(b) postconviction motion filed on March 18, 2004, tolled the one-year limitation period until May 20, 2004, when the trial court denied the motion. Mr. Borghesi did not file an appeal from the denial of the Rule 35(b) motion. Assuming Mr. Borghesi could have appealed from the denial of his Rule 35(b) motion, the Rule 35(b) motion was pending until the time for filing a notice of appeal expired. *See Gibson v. Klinger*, 232 F.3d 799, 804 (10th Cir. 2000). Under Rule 4 of the Colorado Rules of Appellate Procedure, Mr. Borghesi had forty-five days to file a notice of appeal, or until July 5, 2004. Therefore, pursuant to 28 U.S.C. § 2244(d)(2), I find that the one-year limitation period was tolled from March 18, 2004, through July 5, 2004, while the Rule 35(b) motion was pending in state court.

Based on these dates, I find that the 38 days between February 9, 2004, when the one-year limitation period began to run, and March 18, 2004, when the Rule 35(b) motion was filed, count against the one-year limitation period. In addition, the 315 days

5

between July 5, 2004, when the proceedings relevant to the Rule 35(b) motion concluded, and May 16, 2005, when the instant action was filed pursuant to *Houston*, 487 U.S. at 270, also count against the one-year limitation period. Therefore, because only a total of 353 days count against the one-year limitation period, I find that the instant action is not time-barred.

### III. Exhaustion of State Remedies

Respondents next argue that Mr. Borghesi failed to exhaust state remedies for his third claim. Respondents specifically argue that Mr. Borghesi failed to raise the third claim before the Colorado Supreme Court and that the claim is procedurally defaulted. Mr. Borghesi disagrees. I need not resolve the issue of whether Mr. Borghesi has exhausted state remedies for the third claim because, for reasons discussed later in this order, I find that the third claim lacks merit. *See* 28 U.S.C. § 2254(b)(2).

### IV. Standard of Review

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Mr. Borghesi seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000) (Stevens, J., writing for the Court). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412 (O'Connor, J., writing for the Court). If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See id.* at 404-05.

The "contrary to" clause allows a writ of habeas corpus to issue "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently that [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. The "unreasonable application" clause allows a writ of habeas corpus to issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See id.* at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

7

federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Mr. Borghesi bears the burden of rebutting the presumption by clear and convincing evidence.

I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

V. <u>Merits of the Claims</u>

<u>Claim One</u>

Mr. Borghesi's right to due process of law and a fair trial was not violated by the admission of evidence of an impermissibly suggestive identification procedure. In the state courts, Mr. Borghesi complained that a photography array used to identify him was impermissibly suggestive because his photograph had a lighter coloration or was more "brightly lit" than the photographs of other individuals. *See* answer at ex. A at 20.

8

The Colorado Supreme Court held that the lighting alone did not render the array impermissibly suggestive:

> We conclude, consistent with the views of both the trial court and the court of appeals, that the highlighting of the defendant's image under the circumstances of this case did not cause the photo array to be impermissibly suggestive. We base our conclusion on the fact that neither the difference in lighting nor the positioning of the defendant in his photograph is connected to a specific, identifying feature of the defendant raised by any of the witnesses.

*Borghesi*, 66 P.3d at 104.

When the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications nevertheless were reliable in view of the totality of the circumstances. *See Simmons v. United States*, 390 U.S. 377, 384 (1968); *United States v. Sanchez*, 24 F.3d 1259, 1261-62 (10th Cir. 1994); *Johnston v. Makowski*, 823 F.2d 387, 391 (10th Cir. 1987). These two prongs must be analyzed separately, and it only is necessary to reach the second prong if the court first determines that the array was impermissibly suggestive. *Sanchez*, 24 F.3d at 1262; *Johnston*, 823 F.2d at 391.

Relevant factors in evaluating whether a pretrial photographic identification procedure is impermissibly suggestive include the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves. *United States v. Wiseman*, 172 F.3d 1196, 1208 (10th Cir. 1999); *Sanchez*, 24 F.3d at 1262.

In *Borghesi*, 66 P.3d at 105, the state supreme court distinguished *Wiseman*. *Borghesi* noted that in *Wiseman* "the court concluded that a photographic lineup was impermissibly suggestive primarily because the defendant's picture stood out from the others," and because "the police officers made comments to some of the witnesses viewing the array that a suspect had been arrested, and comments to other witnesses that the perpetrator of the robberies might not be in the array." *Borghesi*, 66 P.3d at 105 (citing *Wiseman*, 172 F.3d at 1209-10). While acknowledging that "a photo unique in a manner directly related to an important identification factor may be impermissibly suggestive," the Colorado Supreme Court in *Borghesi* noted that "[h]ere, because none of the witnesses reviewing the array described the robber with features uniquely highlighted by the defendant's photograph, the array was not impermissibly suggestive." *Id.* at 105. The Colorado Supreme Court also noted that the investigating officer "made no improperly suggestive overtures." *Id.* Having held that the array was not impermissibly suggestive, the state supreme court did not reach the second prong of the test.

The Colorado Supreme Court's ruling that the photographic lineup in this case was not impermissibly suggestive did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. The first claim is without merit.

### Claim Two

In the state courts, Mr. Borghesi alleged that his information was multiplicitous because it charged what was one robbery as two offenses in violation of his right to be

free from double jeopardy. In his federal habeas corpus application, Mr. Borghesi alleges that his due process rights were violated for the same reason. Multiplicity refers to charging the same offense in two or more counts of an information or indictment, and creates a danger that a defendant will receive multiple punishments for the same offense, raising double jeopardy implications. *See United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997). Despite Mr. Borghesi's current characterization of this claim as a due process violation, I will treat the claim as asserting a violation of his right to be free from double jeopardy, the claim he exhausted in the state courts. Even if Mr. Borghesi were trying to raise a due process claim, the claim would be barred procedurally. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Mr. Borghesi's right to be free from double jeopardy was not violated by the information in this case. The constitutional guarantee against double jeopardy consists of three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The Double Jeopardy Clause is not violated when multiple, but separate, violations of the same provision are charged in multiple counts. "[W]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). This protection is limited to ensuring that "the sentencing discretion of courts is confined to the limits established by the

legislature" because the legislature is vested with the "substantive power to prescribe crimes and determine punishments." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). When criminal conduct constitutes a violation of two statutory provisions, the test to determine whether the punishments are "multiple" in violation of the Double Jeopardy Clause is "essentially one of legislative intent." *Id.*

Following a thorough analysis of state robbery statutes and robbery at common law, the Colorado Supreme Court held that the Colorado robbery statutes primarily are intended to protect "persons," not "property." *Borghesi*, 66 P.3d at 101. The state supreme court concluded that a defendant may be convicted of "more than one count of robbery for a single taking of property from more than one person" because each person who is subject to force and intimidation "constitutes a victim of a separate offense." *Borghesi*, 66 P.3d 102-03.

Federal courts in a federal habeas corpus proceeding are bound to accept the Colorado Supreme Court's construction of Colorado statutes. *See Hunter*, 459 U.S. at 368; *O'Brien v. Skinner*, 414 U.S. 524, 531 (1974). In determining whether a defendant's conduct constitutes a single criminal offense or separate criminal offenses for double jeopardy purposes, the federal courts defer to the state court's interpretation of the relevant statutory provisions. *Lucero v. Kerby*, 133 F.3d 1299, 1316 (10th Cir. 1998). Thus, Mr. Borghesi fails to show a violation of double jeopardy.

The Colorado Supreme Court's ruling that the information did not violate the Double Jeopardy Clause did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. The second claim

is meritless. To the extent Mr. Borghesi complains that the consecutive sentences he received for the robberies were improper under Colo. Rev. Stat. § 18-1-408(3), he alleges only a violation of state law. A habeas corpus application is limited to the review of a state court conviction in violation of federal law. *Coleman*, 501 U.S. at 730.

Claim Three

Mr. Borghesi claims that the evidence was insufficient to sustain the robbery naming Michael MacMillan as the victim. He specifically claims that the evidence was insufficient because the evidence showed that property only was taken from Jason Downs. This claim is without merit.

The test for a sufficiency-of-the-evidence claim on federal habeas corpus review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The Court may not weigh conflicting evidence nor consider the credibility of witnesses. Rather, the Court must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

As discussed above in claim two, a defendant can be convicted of more than one count of robbery for a single taking of property from more than one person because each person who is subject to force and intimidation constitutes a victim of a separate offense under the Colorado robbery statutes. *Borghesi*, 66 P.3d at 102-03. In determining whether the evidence was sufficient to support the conviction, a federal

court must refer to the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16; *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007).

The Colorado Court of Appeals held that when Mr. Borghesi robbed the store, both employees were present and had the right to control the money. Although Mr. Downs actually handed over the money, the money also was taken from the presence and control of Mr. MacMillan. Mr. Borghesi's use of the hatchet frightened both clerks. Because it was not necessary under Colorado law for property to be taken from "the person or presence" of Mr. MacMillan, *see People v. Borghesi*, No. 99CA1358, slip op. at 1, the sufficiency of the evidence does not fail because the evidence showed that property only was taken from Mr. Downs. The Colorado Court of Appeals' decision that the evidence was sufficient under Colorado law to sustain the robbery naming Mr. MacMillan as the victim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. The third claim is without merit.

### Claim Four

As his final claim, Mr. Borghesi argues that the evidence was insufficient to sustain his conviction for the September 19, 1997, robbery of Kitty's because the victim, Jason Downs, did not make an in-court identification of him as the robber as to this offense. However, using the correct standard for reviewing the sufficiency of the evidence under *Jackson*, i.e., "whether the evidence, viewed as a whole, and in the light most favorable to the prosecution, is sufficient to support a conclusion by a

14

reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt," *Borghesi*, 40 P.3d at 19, the Colorado Court of Appeals held that the evidence was sufficient. The appeals court noted:

> The surveillance videotape of the second robbery and still images taken from the videotape were admitted at trial. Two photographs of defendant, which were taken around the time of the robbery, were also in evidence.
>
> Additionally, the first clerk's identification of defendant in the first robbery was circumstantial evidence implicating defendant in the second robbery because the two robberies were uniquely similar and were likely to have been committed by the same person. Moreover, the detective testified that he recognized defendant as the person pictured in the security videotapes.

*Id.* at 20. The Colorado Court of Appeals' decision that the evidence was sufficient to support Mr. Borghesi's conviction for the September 19, 1997, robbery of Kitty's did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. The fourth claim is without merit.

VI. Conclusion

The claims asserted in the instant habeas corpus application are meritless. Therefore, habeas corpus relief will be denied. Accordingly, it is

ORDERED that the habeas corpus application is **DENIED** and the action is **DISMISSED WITH PREJUDICE**. It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.

15

Dated: February 13, 2008

        BY THE COURT:


        s/ Wiley Y. Daniel
        Wiley Y. Daniel
        U. S. District Judge